UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

KEVIN LAPINE, :
         Plaintiff, :
          :
    v. : No. 5:15-cv-642
          :
MATERION CORPORATION, :
         Defendant. :

**MEMORANDUM**
**Materion Corporation's Motion to Dismiss, ECF No. 5- Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**                                                                            **July 21, 2016**
**United States District Judge**

**I.**     **Introduction**

On February 10, 2015, Plaintiff Kevin LaPine filed a Complaint against Materion Corporation, alleging that on February 25, 2013, he was severely injured while working at an industrial facility owned by Materion Brush, Inc. ("Materion Brush"). A Motion to Dismiss for lack of personal jurisdiction and failure to state a claim was filed by Materion Corporation on May 1, 2015. ECF No. 5. The Court allowed limited jurisdictional discovery and directed the parties to file supplemental briefs after the close thereof. On July 6, 2016, the Court held oral argument on the motion. The motion is now ripe for disposition. For the reasons stated below, the motion is granted in part and denied in part.

**II.**     **Background**

    **A.**     **Relevant Parties**

Kevin LaPine is currently a citizen of New York. Compl. ¶ 1, ECF No. 1. Materion Brush is an Ohio corporation headquartered at 6070 Parkland Boulevard, Mayfield Heights, Ohio.

1

Def.'s 2nd Mem. Supp. Motion Dismiss 2, ECF No. 34 (hereinafter "Def.'s Mem."). Materion Brush, however, is not named as a defendant.[1] Materion Corporation is a holding company incorporated in Ohio which also maintains headquarters at 6070 Parkland Boulevard, Mayfield Heights, Ohio. *Id*. Materion Corporation operates solely as a holding company and is the parent of several subsidiaries, including Materion Brush. Materion Corporation does not manufacture or sell any products, nor does it have any of its own employees. *Id.*

### 1. Corporate History

Prior to 2000, Materion Brush was called Brush Wellman, Inc. ("Brush Wellman"),[2] and Materion Corporation did not exist. Hasychak Dep. 10:13-11:5, 37:9, Apr. 18, 2016, ECF No. 35 Ex. B. In 2000, the board of Brush Wellman decided to create a holding company, called Brush Engineered Materials, Inc., to own Brush Wellman and all of Brush Wellman's subsidiaries.[3] *Id.* at 55:13-17. In 2011, as part of a "rebranding effort," Brush Engineered Materials and all of its wholly owned subsidiaries were renamed under the "Materion" brand, with Brush Engineered Materials becoming Materion Corporation and Brush Wellman becoming Materion Brush.[4] Def.'s Mem. at 2.

---

[1] During oral argument, Plaintiff noted that suing Materion Brush would likely be futile because, under Pennsylvania law, workers' compensation is the exclusive remedy when a worker is injured within the scope of his employment. Materion Brush, being Plaintiff's employer, would therefore likely be immune from suit.

[2] Brush Wellman, Inc. was originally incorporated as Brush Beryllium Corporation in the 1930s and subsequently changed its name in 1981. Hasychak Dep. 14:11-17.

[3] Brush Wellman owned "between seven and ten subsidiaries" which are "largely the same" as the current subsidiaries of Materion Corporation. *Id.* at 55:7-11. However, between six and seven more companies have been purchased by Materion Corporation since 2000. *Id.* at 57:12-22.

[4] Following this rebranding, a promotional video was uploaded to the website Youtube, and the video begins by stating, "On March 8, 2011, ten companies unified as one around the world—Materion." Pl.'s Mem. at 6. However, the structures of the companies were unaffected by the rebranding and they remained legally separate entities. Hasychak Dep. at 54:7-10.

**2.      Relationship between Materion Corporation and Materion Brush**

Since its inception, Materion Corporation has owned 100% of all of its subsidiaries' stock, including Materion Brush. Hasychak Dep. 63:7-64:2. Although Materion Corporation and Materion Brush share the same address, both companies pay for "their own separate space." *Id.* at 87:23-88:2. Materion Corporation does not provide any personnel, equipment, or services to its subsidiaries. Pl.'s 2nd Mem. Opp'n Motion to Dismiss 5, ECF No. 35 (hereinafter "Pl.'s Mem."). Materion Brush purchases resources used in a majority of its manufacturing process from a Materion mining company, Materion Natural Resources, but Materion Brush does not exclusively rely on Materion Natural Resources. Hasychak Dep.  28:8-36:13. Similarly, Materion Brush relies on another Materion subsidiary, Materion Services, for administrative services such as legal, purchasing, and accounting. Pl.'s Mem. at 5. Materion Brush also accounts for its own finances, maintains separate books and records, and is separately and adequately capitalized.[5] Hasychak Aff. ¶¶ 12-13, ECF No. 5 Ex. A.

Materion Corporation and Materion Brush share several of the same officers and directors:

| NAME | POSITION(S) WITH MATERION CORPORATION | POSITION(S) WITH MATERION BRUSH |
|---|---|---|
| Richard J. Hipple | Director<br>President<br>Chairman<br>Chief Executive Officer | Director |
| Joseph P. Kelley | Vice President of Finance<br>Chief Financial Officer | Vice President of Finance<br>Director |
| Gregoy R. Chemnitz | Vice President<br>General Counsel | Vice President<br>General Counsel |
| Michael C. Hasychak | Vice President | Vice President |

---

[5]      As of December 31, 2014, Materion Brush Inc. had approximately $264 million in gross assets and $188 million in current assets, as compared to Materion Corporation's approximately $3 million in current assets.

|  | Treasurer<br>Secretary | Treasurer<br>Secretary |
|---|---|---|
| Gary W. Schiavoni | Assistant Treasurer<br>Assistant Secretary | Assistant Treasurer<br>Assistant Secretary |

Pl.'s Mem. 2. In total, two of Materion Brush's three board members and four of Materion Brush's eight corporate officers are also either officers or directors of Materion Corporation. Additionally, in his deposition, Michael Hasychak testified that he serves as a director and officer for other Materion subsidiaries, and he also indicated that Gary Schiavoni is an officer for other Materion subsidiaries.[6] Hasychak Dep. 88:11-92:9.

### B. Materion Corporation's Contacts with Pennsylvania

According to Mr. Hasychak's Affidavit, Materion Corporation possesses virtually no contacts with Pennsylvania:

> 4. Materion Corporation has never maintained an office, been licensed or registered to do business, or had a statutory agent, in the State of Pennsylvania.
>
> 5. Materion Corporation has never owned any real property in the State of Pennsylvania, nor has it maintained any bank accounts in the State of Pennsylvania.
>
> 6. Materion Corporation has never maintained any employees, agents, or representatives to conduct business within the State of Pennsylvania.
>
> 7. Materion Corporation has never advertised or solicited business in the State of Pennsylvania.
>
> 8. Materion Corporation has never voluntarily consented to the jurisdiction of the courts of the State of Pennsylvania.

Hasychak Aff. ¶¶ 4-8. Regardless, Plaintiff asks this Court to impute Materion Brush's contacts with Pennsylvania to Materion Corporation.

---

[6] Mr. Hasychak could not recall how many companies for which he served as an officer and director and for which Mr. Schiavoni served as an officer. Hasychak Dep. 88:11-92:9. Although Mr. Hasychak is a director and officer of multiple Materion companies, he is employed by Materion Services, Inc. and does not receive compensation for serving as an officer for other Materion companies. *Id.* at 95:7-96:9.

In seeking the imputation of Materion Brush's contacts, Plaintiff claims that Materion Corporation is the "alter ego" of Materion Brush. Pl.'s Mem. at 1. Plaintiff supports his claim by citing Materion Corporation's ownership of all Materion Brush's stock, the significant overlap between Materion Corporation and Materion Brush's directorships and officers positions, the sharing of office space and headquarters, and the interrelationship between Materion Corporation's subsidiaries. *Id.* at 2-8. Plaintiff also argues that Materion Corporation has implicitly recognized and benefitted from the alter ego relationship because Materion Corporation and its subsidiaries undertook a rebranding effort in 2011 to display collaboration between its subsidiaries, which in turn increased Materion Corporation's value and stock price. *Id.* at 6-7. Thus, according to Plaintiff, "[t]he commonality of . . . management personnel, branding, facilities, and operational functions" between Materion Brush and Materion Corporation justifies the imputation of Materion Brush's contacts. *Id.* at 8.

### III. Legal Standards

#### A. Rule 12(b)(2) Motion to Dismiss – Personal Jurisdiction

The Rule 12(b)(2) motion to dismiss standard is as follows:

> When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), I must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has raised a jurisdictional defense, the plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper." *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). If an evidentiary hearing is not held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *Id.* A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987).

*Campbell v. Fast Retailing USA, Inc.*, No. CV 14-6752, 2015 WL 9302847, at *2 (E.D. Pa. Dec. 22, 2015).

A federal district court is permitted to exercise "personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." *Arch v. Am. Tobacco Co.*, 984 F. Supp. 830, 834 (E.D. Pa. 1997) (quoting *Kenny v. Alexson Equip. Co.*, 432 A.2d 974, 980 (Pa. 1981)). Under Pennsylvania law, a court may exercise personal jurisdiction to the fullest extent allowed by the United States Constitution. 42 Pa. Cons. Stat. Ann. §§ 5308, 5322(b). Thus, the statutory personal jurisdiction analysis is incorporated into the overarching question "whether the court's assertion of jurisdiction complies with the constitutional requirement of due process as articulated in the personal jurisdiction context." *Arch*, 984 F. Supp. at 835 (citing *Clark v. Matsushita Elec. Indus. Co.*, 811 F. Supp. 1061, 1064 (M.D. Pa. 1993)).

A nonresident defendant may be subject to personal jurisdiction in Pennsylvania under either general or specific personal jurisdiction. *Brooks v. Bacardi Rum Corp.*, 943 F. Supp. 559, 561 (E.D. Pa. 1996). General jurisdiction allows suits to be brought against a non-resident corporation on causes of action arising from dealings distinct from its activities within the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For a corporation, the "paradigm forum for the exercise of general jurisdiction is . . . one in which the corporation is fairly regarded as at home." *Id.* Specific jurisdiction, on the other hand, exists when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

6

**IV.     Analysis**

Applying the principles described above to the matter at hand, this Court finds that (1) Materion Corporation is not subject to general or specific jurisdiction in Pennsylvania and (2) Plaintiff fails to provide sufficient evidence justifying the imputation of Materion Brush's contacts to Materion Corporation based on the alter ego theory. As a holding company incorporated in Ohio with its principal place of business in Ohio as well, Materion Corporation is certainly not "at home" in Pennsylvania and thus not subject to general jurisdiction. Further, this litigation does not arise from the sole contact Materion Corporation possesses with Pennsylvania—the ownership of all Materion Brush's stock—and therefore specific jurisdiction over Materion Corporation does not exist.

In *In re Latex Gloves Product Liability Litigation*, the district court stated that "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." No. MDL 1148, 2001 WL 964105, at *3 (E.D. Pa. Aug. 22, 2001) (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000)). Because personal jurisdiction cannot be premised solely on corporate affiliation or stock ownership, it follows that the only manner in which Materion Corporation could be haled into a Pennsylvania court would be through the imputation of Materion Brush's contacts under the alter ego theory.[7]

---

[7]     Materion Corporation argues that Plaintiff must show that "corporate veil piercing" is appropriate. Def.'s Mem. at 1. Although courts have used veil piercing terminology somewhat loosely in the past, the requirements for imputing liability through veil-piercing and those for attribution of contacts are two distinct standards. *See In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 319 (W.D. Pa. 2010), *aff'd,* 683 F.3d 462 (3d

The question of whether an alter ego relationship exists "should be examined in terms of the legal interrelationship of the entities, the authority to control and the actual exercise of control, the administrative chains of command and organizational structure, the performance of functions, and the public's perception." *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005) (quoting *In re Latex Gloves*, 2001 WL 964105, at *12). Courts in this district consider ten discrete factors as part of this inquiry:

> 1) ownership of all or most of the stock of the related corporation; 2) common officers and directors; 3) common marketing image; 4) common use of a trademark or logo; 5) common use of employees; 6) integrated sales system; 7) interchange of managerial and supervisory personnel; 8) performance by the related corporation of business functions which the principal corporation would normally conduct through its own agent or departments; 9) acting of the related corporation as marketing arm of the principal corporation, or as an exclusive distributor; and 10) receipt by the officers of the related corporation of instruction from the principal corporation.

*Id.*; *Bassil v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 12-4204, 2014 U.S. Dist. LEXIS 135927, at *5 (E.D. Pa. Sep. 24, 2014); *In re Latex Gloves*, 2001 WL 964105, at *3-4. Although

---

Cir. 2012) ("The test for attribution of contacts, i.e. personal jurisdiction, is less stringent than that for liability." (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985))); *see also Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 901 (2d Cir. 1981); *cf. Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) ("Veil-piercing doctrine has been criticized for employing the same formulations of the test across the different contexts in which plaintiffs seek to impose liability. . . It is often argued that because public policy varies from contract to tort to property, for example, veil-piercing standards should vary as well."). It is clear, however, that there is a strong presumption in Pennsylvania against piercing the corporate veil, and by analogy, courts must proceed cautiously before treating two legally separate entities as one for any purpose. *See S.T. Hudson Engineers, Inc. v. Camden Hotel Dev. Associates*, 747 A.2d 931, 935 (Pa. Super. 2000) ("When making the determination of whether to pierce the corporate veil, the court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual, circumstances call for an exception. Care should be taken on all occasions to avoid making the entire theory of corporate entity useless.") (internal citations omitted) (first quoting *Miners, Inc. v. Alpine Equipment Corp.*, 722 A.2d 691, 694-95 (Pa. Super. 1998); then quoting *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967); and then quoting *Gagnon v. Speback*, 131 A.2d 619, 621 (Pa. 1957)).

8

one aspect of the relationship between two corporations will not unilaterally dispose of the analysis, a review of existing case law demonstrates that the most significant pieces of evidence are those that concern the existence (or non-existence) of a parent company's control over its subsidiaries' day-to-day functions. *See In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 388-95 (M.D. Pa. 2009); *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 422-23 (E.D. Pa. 2005).

Plaintiff provides evidence satisfying the first four factors as well as the sixth, but these considerations are outweighed by the lack of support for the remaining, more significant factors which address the level of control a parent company exercises over its subsidiary's day-to-day operations. *See In re Enter.*, 735 F. Supp. 2d at 323 (holding that the common marketing image and integrated sales system of the parent and subsidiary did not "rise to the level of control to establish an alter-ego relationship"); *Savin Corp. v. Heritage Copy Products, Inc.*, 661 F. Supp. 463, 470 (M.D. Pa. 1987) (concluding that the mere existence of common officers is not sufficient to demonstrate a parent's day-to-day control over its subsidiary if "the overlapping which does exist is no more significant than is to be expected in a situation where a holding company owns a majority interest in a subsidiary"). The fifth and seventh factors are certainly not satisfied because Materion Corporation does not have any employees. The eighth factor is not satisfied because in the case of a holding company, the subsidiary is not performing a function that the parent would otherwise have had to perform itself—Materion Corporation could simply hold another type of subsidiary. *See Arch*, 984 F. Supp. at 840. Regarding the ninth factor, no evidence suggests that Materion Brush acts as Materion Corporation's marketing arm or as its exclusive distributor. Finally, the tenth factor is also not satisfied because, although overlap exists among Materion Brush and Materion Corporation's directors and officers, Plaintiff

9

has proffered no evidence demonstrating that Materion Corporation instructs its subsidiaries in any manner. *Cf. Basil*, 2014 U.S. Dist. LEXIS 135927, at *15-17 (finding that the eighth and tenth factors were "very significant" in establishing an alter ego relationship between a parent and its subsidiary).

Further, Materion Corporation demonstrates that corporate formalities have not been ignored: Materion Corporation's subsidiaries pay for their own office space; the subsidiaries are free to obtain services from anywhere without any permission from Materion Corporation; the subsidiaries keep and maintain separate books and records; and the subsidiaries are separately and adequately capitalized. *See In re Latex Gloves*, 2001 WL 964105, at *3.

Plaintiff's evidence and allegations do not relate to Materion Corporation's control over Materion Brush's day-to-day operations, and thus Materion Corporation cannot be considered an alter ego of Materion Brush. Although Materion Corporation may exert some influence over Materion Brush because it is Materion Brush's sole shareholder and overlap exists between the two companies' directors and officers, Plaintiff has failed to demonstrate that the degree of control exercised by Materion Corporation over Materion Brush is greater than that normally associated with common ownership and directorship. Similarly, despite Materion Corporation's promulgation that it had united with its subsidiaries "as one," corporate formalities were not ignored, and this Court will not undermine fundamental corporate theory by attributing a subsidiary's contacts to its parent simply because both operate under the same brand name.

## V.     Conclusion

Plaintiff has not established that Materion Corporation is "at home" in Pennsylvania, that Materion Corporation directed its activities at Pennsylvania, or that this Court should impute Materion Brush's contacts under the alter ego theory. Consequently, this Court does not have

personal jurisdiction. Because the statute of limitations has expired, this Court finds it is in the interest of justice to transfer this action to a court with jurisdiction, rather than dismissing it outright. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). Materion Corporation maintains its principal place of business in Mayfield Heights, Ohio, which is in the Northern District of Ohio. This action is therefore transferred to the United States District Court for the Northern District of Ohio. The Motion to Dismiss for failure to state a claim is denied without prejudice to refile in the transferee court.

   A separate order follows.

                   BY THE COURT:

                   */s/ Joseph F. Leeson, Jr.*
                   JOSEPH F. LEESON, JR.
                   United States District Judge